**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **YVETTE FELARCA** *et al.*, <br> Plaintiff, <br> vs. <br> **ROBERT J. BIRGENEAU** *et al.*, <br> Defendant(s). | Case No.: 11-CV-05719 YGR <br> *TENTATIVE* ORDER ON MOTIONS TO DISMISS |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE OF THE FOLLOWING TENTATIVE RULING ON THE MOTIONS TO DISMISS SCHEDULED FOR HEARING ON FEBRUARY 26, 2013 AT 2:00 P.M.

The Court has reviewed the parties' papers and is inclined to partially grant the motions to dismiss filed by the Alameda County Sheriff's Office Defendants (Dkt. No. 50) and the University of California Police Department Defendants (Dkt. No. 58) (collectively "Police Officer Defendants") and grant the motion filed by the UC Administrators (Dkt. No. 57). This ruling would dismiss with leave to amend all claims against all defendants except for Count IV for excessive force against the Police Officer Defendants Chavez, Garcia, King, Obichere, and Samantha Lachler. This is a *tentative* ruling and the parties still have an opportunity to present oral argument. Alternatively, if the parties **JOINTLY** stipulate in writing to entry of the tentative ruling, the hearing shall be taken off calendar, and the tentative ruling shall become the Order of the Court.

The Court *TENTATIVELY* **DENIES IN PART** and **GRANTS IN PART** the motions of the Police Officer Defendants and **GRANTS** the Motion of the UC Administrators, each with **LEAVE TO AMEND** as follows:

**I.    INTRODUCTION**

Plaintiffs bring this civil rights action against administrators of the University of California, Berkeley ("UC Berkeley") and police officers from the University of California Police Department

("UCPD") and Alameda County Sheriff's Office ("ACSO") for injuries suffered when UC Berkeley administrators allegedly ordered the police to brutally and violently break up a peaceful protest that took place on the UC Berkeley campus on November 9, 2011.

Plaintiffs' First Amended Complaint ("FAC"), which spans 499 paragraphs and 65 pages, alleges six claims on behalf of twenty nine individual plaintiffs against seventeen individual defendants. Despite its length, the FAC fails significantly to identify which claim is brought on behalf of whom or against whom, an issue which must be rectified.[1] The six claims are for: (1) Police Force in Violation of the First Amendment of the United States Constitution; (2) Abuse of Process in Violation of the First and Fourth Amendments of the United States Constitution; (3) Retaliatory Prosecution in Violation of the First and Fourth Amendments of the United States Constitution; (4) Excessive Force in Violation of the Fourth Amendment of the United States Constitution; (5) False Arrest ("Seizure") in Violation of the Fourth Amendment of the United States Constitution; and (6) Conspiracy to Violate Plaintiffs' First, Fourth, and Fourteenth Amendment Rights.

The Defendants have filed three motions to dismiss Plaintiffs' Amended Complaint. Their arguments fall into several broad categories: (1) the Plaintiffs' allegations do not allege the violation of a clearly established right, (2) do not allege sufficient (or any) personal involvement of the Defendants in the challenged actions, (3) are too conclusory to overcome a qualified immunity defense, and (4) the Defendants were not the legal cause of Plaintiffs' damages, if any. Permeating these arguments is a dispute of the Plaintiffs' characterization of the protest and the Defendants' response to that protest, including whether Defendants used excessive force, whether Defendants' actions were a result of objections to Plaintiffs' message, and whether Plaintiffs were harmed.

Having carefully considered the papers submitted and the Amended Complaint, for the reasons set forth below, the Court hereby **DENIES IN PART** and **GRANTS IN PART** the motions of the police officer defendants and **GRANTS** the Motion of the UC Administrators. For those police officers whom Plaintiffs specifically identify as having used force against them, Plaintiffs have

---

[1] Plaintiffs have since clarified that only Count IV, alleging Excessive Force, is asserted against the police officers.

stated a claim for excessive force. For those police officers not alleged to have used any force against the protestors, Plaintiffs fail to state a claim for excessive force. To the extent not otherwise alleged, the UC Administrators cannot be held individually liable for the allegedly unconstitutional acts of police officers based solely on their position within the campus administration or conclusory allegations that they planned and coordinated a police assault on the protestors. **LEAVE TO AMEND** is **GRANTED**.

## II. BACKGROUND

The claims in this case arise from events that took place in connection with protest activities on the UC Berkeley campus on November 9, 2011. The FAC alleges: that day, "thousands of students and community members marched, rallied and peacefully set up protest tents in defense of the integrity of the University as a public institution, against fee hikes and the privatization of public education, and for increasing black, Latina/o, and Native American student enrollment." (FAC ¶ 1.) Police wearing riot gear used batons to clear protestors from the area and take down tents that had been erected. In the course of clearing the tents and protestors, the police viciously beat the protestors. While brutalizing the protestors, the police officers indiscriminately, and without probable cause, falsely arrested and imprisoned over forty protestors, including five of the Plaintiffs in this action. Plaintiffs allege that "Chancellor Birgeneau and other administrators of UC Berkeley coordinated and conducted a planned, violent attack against these peaceful protesters because they opposed the protesters' defense of affordable, public education and their association with the popular 'Occupy Wall Street' movement." (*Id.* ¶ 2.)

### A. "OCCUPY" CAL

In the afternoon of November 9, 2011, protesters erected an "Occupy"-style encampment on the lawn near Sproul Hall on the UC Berkeley campus. (*Id.* ¶¶ 76-77.) Due to the UC Administrators' past tolerant response to protestors setting up tents on campus, the protestors assumed they would be able to set up protest tents without incident. Unlike previous protests,

however, Plaintiffs allege that the UC Administrators disagreed with the protestors' message and sought to "chill" their speech.[2]

### 1. *Afternoon Raid*

That afternoon, police officers raided the encampment to take down the tents. Dozens of police officers, including officers from UCPD and ACSO, showed up in riot gear. Protestors gathered around the tents, with some linking arms. "At about 3:30 pm, the police forcefully attacked students, pushing with the broad side of their batons, jabbing students with the ends of their batons in students' stomachs, chests, ribs, legs, backs, and groins, using overhand strikes and headlocks, and yanking people out by their hair and arresting them." (*Id.* ¶ 82.) The police cleared the tents and, at about 3:55 pm, the police retreated. (*Id.* ¶¶ 86-87.)

After the police cleared the encampment, protestors erected more protest tents in the same area. (*Id.* ¶ 88.) "At 5:36 pm, defendant Chancellor Birgeneau, in an email to defendant [UC Administrators] … stated: 'It is critical that we do not back down on our no encampment policy.'" (*Id.* ¶ 89.) "At or around 6:15 pm, Vice Chancellor of Student Affairs Harry LeGrande … read a statement [to the protestors], declaring that the administration would allow protesters to stay on Sproul Plaza, but they could not have protest tents." (*Id.* ¶ 90.) By 9:00 pm, hundreds of protestors had gathered in Sproul Plaza. (*Id.* ¶ 92.) Vice Chancellor LeGrande announced that protesters had until 10:00 pm to remove the tents before the police would show up, give a ten-minute warning, and remove the tents by force. (*Id.* ¶ 147.)

### 2. *Evening raid*

At 9:30 pm, the police showed up in riot gear and raided the encampment. (*Id.* ¶ 148.) Protestors linked arms to face the police. As in the afternoon, the officers used batons, but this time with even more brutality, pushing and jabbing people and using overhand strikes on protestors' heads. (*Id.* ¶ 95.) The officers grabbed and indiscriminately pulled some of the protestors out of the lines and placed them under arrest. (*Id.* ¶ 98.) Once the officers gained access to the tents, the

---

[2] Plaintiffs allege that UC Berkeley Administrators previously permitted camping where they agreed with the protestors' message: first in 1985 when students protested against South African Apartheid and more recently, in May 2010 protestors camped in front of Chancellor Birgeneau's home, (FAC ¶ 73) which Plaintiffs explain in their opposition brief was in protest of Arizona's immigration law, SB 1070.

officers dismantled the tents. (*Id.* ¶ 99.) However, even after clearing the encampment, the police continued to beat the protestors. (*Id.* ¶ 101.) During this time, other students hurried to Sproul Plaza from across campus to defend the protesters. (*Id*. ¶ 103.) Over two thousand people amassed before police ceased their attack on the protestors. (*Id*.)

## B. THE PARTIES

The Plaintiffs in this action were among the protestors who participated in the Occupy Cal protest and consist primarily of current and former students of UC Berkeley, as well as organizers with the Coalition to Defend Affirmative Action, Integration, and Immigrant Rights and Fight for Equality By Any Means Necessary ("BAMN"). (*See id.* ¶¶ 21-50.) They allege they were beaten by the police during the raids on the encampment. Five of the Plaintiffs, Francisco Alvarado-Rosas, Julie Klinger, Anthony Morreale, Sachinthya Wagaarachchi, and Taro Yamaguchi-Phillips, were among those arrested on November 9, 2011, which they allege was false arrest.[3] (*Id.* ¶¶ 488, 493.) Another five Plaintiffs, Yvette Felarca, Joshua Anderson, Ashley Pinkerton, Erick Uribe, and Justin Tombolesi, were not arrested on November 9, 2011, but subsequently were charged with misdemeanors for their actions in connection with the Occupy Cal protest, which Plaintiffs allege constitutes retaliatory prosecution and abuse of process. (*Id*. ¶¶ 6, 466.)[4]

Plaintiffs seek to impose liability not only on the police officers who directly engaged in allegedly unconstitutional conduct but also on the UC Administrators, whom Plaintiffs allege disagreed with Plaintiffs' message and directed the officers to break up the protest by using excessive force. The Defendants are: (1) administrators of UC Berkeley, including former

---

[3] They contend that they were not violating any laws or regulations and the officers gave no grounds for their arrests, and note that they were not prosecuted for violating any laws or regulations. (*Id*. ¶¶ 489 491.)

[4] Each was arraigned on misdemeanor charges including willfully resisting, delaying or obstructing a police officer, in violation of California Penal Code § 148(a)(1), and willfully and maliciously obstructing the free movement of any person on a place open to the public, in violation of California Penal Code § 647c. (FAC ¶¶ 136, 190, 353, 392, 409.) Plaintiffs allege that the initiation of these proceedings constitutes retaliatory prosecution and abuse of process.

At their arraignments, the District Attorney requested, and the Superior Court granted, "stay away" orders, which prohibited them from being within one hundred yards of property belonging to the University of California, except for class-related and work-related official business. (*Id*. ¶¶ 7, 472.) Later, the District Attorney requested that the orders be rescinded, and the charges were dropped. (*Id*. ¶ 117.) Plaintiffs allege that obtaining "stay away" orders constitute abuse of process.

Chancellor Robert J. Birgeneau, Executive Vice Chancellor and Provost George Breslauer, and Vice Chancellor of Student Affairs Harry Le Grande (collectively "UC Administrators"); and (2) UCPD Officers N. Hernandez and Samantha Lachler, and UCPD Detective Rick Florendo; and (3) ACSO Chief Gregory Ahern, and ACSO Officers Chavez, Garcia, King, and Obichere (the UCPD and ACSO Officers are collectively referred to as "Police Officer Defendants").

All of these Defendants have filed motions to dismiss.

## III. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Although "detailed factual allegations" are not required, plaintiffs' obligation to provide the grounds for their entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, *supra*, 550 U.S. at 555 (citations and quotations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *See Iqbal*, *supra*, 556 U.S. at 679.

## IV. DISCUSSION

Title 42, Section 1983 of the United States Code ("Section 1983")[5] provides a cause of action against persons acting under color of state law who have violated rights guaranteed by the

---

[5] Counts I through V are brought pursuant to 42 U.S.C. 1983 and Count VI is brought under 42 U.S.C. § 1985. Section 1983 provides:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured …

42 U.S.C. § 1983.
> Section 1985 provides:
> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any

United States Constitution. *See Buckley v. City of Redding*, 66 F.3d 188, 190 (9th Cir. 1995); *Demery v. Kupperman*, 735 F.2d 1139, 1146 (9th Cir. 1984). Section 1983 does not itself create a protectable right, but rather, it provides a federal cause of action for violation of federally protected rights. To state a claim under Section 1983, a plaintiff must plead four elements: (1) conduct by "a person"; (2) acting "under color of state law"; (3) proximately caused (4) the deprivation of a federally protected right. *OSU Student Alliance v. Ray*, 699 F.3d 1053, 1061 (9th Cir. 2012). Defendants argue that Plaintiffs fail to allege the third and fourth elements, deprivation of a constitutional right or causation.

The Court starts its analysis with (A) the excessive force claims brought against the Police Officer Defendants. After that, the Court will address (B) the arguments of the UC Administrators against whom Plaintiffs seek to impose liability based upon the actions of the Police Officer Defendants. Then the Court will address (C) Plaintiffs' remaining claims.

### A.   POLICE OFFICER DEFENDANTS: 4TH AMENDMENT EXCESSIVE FORCE (COUNT IV)

Plaintiffs have clarified that Count IV for Excessive Force is the only claim brought against the Police Officer Defendants. The Police Officer Defendants argue that the Plaintiffs fail to allege facts sufficient to support a claim that any of them used excessive force against any Plaintiff. Thus, the Police Officer Defendants assert that the FAC does not allege any of them deprived any Plaintiff of a federally protected right.

All excessive force claims are assessed under a Fourth Amendment "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). The inquiry is "whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. The relevant facts and circumstances include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade

---

> person or class of persons of the equal protection of the laws, or of equal privileges and immunities … [and] if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages …

42 U.S.C § 1985(3).

arrest by flight." *Id.* The reasonableness test "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396 (internal citations omitted).

### 1. *UCPD Officer Lachler*

UCPD Officer Lachler asserts that her use of force was "reasonable" under the Fourth Amendment "reasonableness" standard, or at least her conduct was not "'clearly' unreasonable" and argues she is entitled to qualified immunity. The defense of qualified immunity protects "government officials … from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court considering a claim of qualified immunity must determine whether the plaintiff has alleged the deprivation of an actual constitutional right and, if so, whether the right was clearly established such that it would be clear to a reasonable officer that her conduct was unlawful in the situation she confronted. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Officer Lachler argues that her use of force was necessary to counter the combativeness of the protestors. She avers that the protestors made a show of force by linking arms[6] and were challenging the police officers' authority; disobeying police orders; committing the crime of illegal encampment; and interfering with her performance of police duties. Officer Lachler's version of the events, however, is inconsistent with the factual allegations in the FAC, which the Court must accept as true. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).

According to the FAC, at approximately 3:30 pm on November 9, 2011, Plaintiff Hayden Harrison was linking arms with other protestors. (FAC ¶ 254.) The "police made an announcement over a megaphone, [which] Mr. Harrison could not hear." (*Id.* ¶ 255.) Five to ten minutes later, the officers began jabbing people hard with their batons. (*Id.* ¶¶ 256-57.) "The officers were ordering him and others to move back, but this was impossible because of the crowd behind them." (*Id.* ¶ 260.)

---

[6] Lachler also cites to a paragraph in the FAC, which alleges that the protestors surrounded the protest tents, to argue that the protestors surrounded the police.

As to Officer Lachler's specific use of force: "Defendant Officer Lachler was trying to hit [Mr. Harrison] in the groin with the edge of her baton. She did hit his groin and it hurt very badly. He had a stomach ache for several hours afterward." (*Id.* ¶ 258.)

At this pleading stage, Officer Lachler is not entitled to qualified immunity as to Plaintiffs' Fourth Amendment Excessive Force claim. Viewing the facts in the light most favorable to the Plaintiffs, police officers, who were attempting to enforce a no camping ordinance at 3:30 pm, made a dispersal announcement that protestors could not hear, and then the police officers began hitting protestors that were trapped in a crowd. The facts and circumstances confronting the officers, when viewed in the light most favorable to the Plaintiffs, do not support an inference that Mr. Harrison posed a threat to the safety of the officers or others, was disobeying police orders or camping. Rather, the well-pled facts support an inference that Office Lachler hit a passive individual in the groin because, by linking arms with other protestors, he may have inhibited her progress.

The Plaintiffs' description of the events suggests that Officer Lachler may not have been justified in this use of force. Officer Lachler challenges the truth of these allegations and offers a starkly different version of events. However, Officer Lachler does not assert that hitting a passive protestor is constitutional or that the law regarding the use of force against passive individuals was sufficiently unclear at the time of the events at issue that Officer Lachler made a reasonable mistake as to what the law requires. Therefore, Officer Lachler is not entitled to qualified immunity as to the excessive force claim and Plaintiffs may pursue this claim against her.

Based on the foregoing analysis, the Court **DENIES** the Motion to Dismiss Count IV against Officer Lachler.

### 2. *ACSO Officers Chavez, Garcia, King, Obichere*

The ACSO Defendants move for dismissal of the excessive force claim on the basis that "Plaintiffs' allegations are conclusory, legal conclusions, unwarranted deductions of fact or unreasonable inferences." Those allegations include the following:

- Officer Chavez told Plaintiff Felarca to "get out of the way if you don't want to be beaten," and then Officer "Chavez and a second unidentified officer focused their batons on Ms. Felarca. … Ms. Felarca was hit in the right side area of her abdomen. When she went to the hospital later, she was told her liver was beneath that injured

area. … She suffered multiple contusions on her ribs and midsection." (FAC ¶¶ 121, 124, 126, 130.)

- "Officer Garcia continuously jabbed [Plaintiff Joseph Finton] with the end of his baton, in his legs and in his chest. … His chest and legs hurt, and the pain got worse the next day. He had bruises on his chest and legs. He walked with a limp." (*Id.* ¶¶ 247, 253.)

- "Officer King hit Ms. Escobar in her right breast and rib area." (*Id.* ¶ 241.)

- "Officer Obichere of the Alameda County Sheriff's Office, who appeared to weigh over 250 pounds, focused on [Plaintiff Christopher] Anderson and hit him with tremendous force about five times with increasing intensity. In addition to jabs, this officer used overhand swings and struck Mr. Anderson's leg as well." (*Id.* ¶ 169.)

These are not "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Iqbal*, *supra*, 556 U.S. at 678. Alleging that a police officer "used excessive force" is a legal conclusion, but alleging that a police officer used overhand swings to strike the plaintiff is not. Plaintiffs "plead[] factual content that allows the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged." *Id.* (citing *Twombly*, *supra*, 550 U.S. at 556). Therefore, as to ACSO Officers Chavez, Garcia, King and Obichere, the Plaintiffs have pled "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (citing *Twombly*, *supra*, 550 U.S. at 570).

Based on the foregoing analysis, the Court **DENIES** the ACSO Defendants' Motion to Dismiss to the extent it seeks dismissal of Count IV for Excessive Force against Officers Chavez, Garcia, King and Obichere.

   3. *Remaining Officers.*

As to the remaining Police Officer Defendants, UCPD Detective Florendo, UCPD Officer Hernandez, and ACSO Chief Ahern, Plaintiffs do not specifically allege any of them used force against the Plaintiffs. Generalized allegations that "the named defendant officers and the defendants Does 1-100 used excessive force" and "[t]he defendant officers attacked people," (*see id.* ¶¶ 484-85), fail to state claims for excessive force against Detective Florendo or Officer Hernandez. Additionally, Plaintiffs do not object to the dismissal of all claims brought against Gregory Ahern, Chief of the ACSO, against whom no misconduct is alleged.

Therefore, as to Detective Florendo, Officer Hernandez, and Chief Ahern, only, the Court **GRANTS** the Motion to Dismiss the Fourth Amendment Excessive Force claim.

### 4. *Conclusion Regarding Excessive Force Claims Against Police Officers.*

Based on the foregoing analysis, the Court **DENIES IN PART** and **GRANTS IN PART** the Police Officers Defendants' Motions to Dismiss Count IV for Excessive Force. The Court **DENIES** the Motions to Dismiss Count IV as to ACSO Officers Chavez, Garcia, King, Obichere and UCPD Officer Samantha Lachler. The Court **GRANTS** the Motion to Dismiss Count IV as to UCPD Detective Florendo, UCPD Officer Hernandez and ACSO Chief Ahern. The Court **DISMISSES** Count IV against Detective Florendo and Officer Hernandez **WITH LEAVE TO AMEND** and **DISMISSES** Count IV against Chief Ahern **WITH LEAVE TO FILE A MOTION TO AMEND**.

### B. CLAIMS AGAINST THE UC ADMINISTRATORS DEFENDANTS

Defendant UC Administrators move to dismiss the Section 1983 claims against them, arguing that the FAC lacks the requisite factual detail necessary to hold them individually liable for the allegedly unconstitutional conduct of the Defendant Police Officers. The UC Administrators argue that the FAC is devoid of factual allegations that would establish that any *caused* Plaintiffs' alleged injuries so as to hold any of them individually liable for the Plaintiffs' injuries. Plaintiffs argue that the UC Administrators are liable for the police officers' unconstitutional acts because as supervisors they set in motion, or knew of but failed to stop, a series of acts by the police officers that caused Plaintiffs' constitutional injuries.

### 1. *Supervisory Liability*

Supervisors may not be held liable in a Section 1983 action for the unconstitutional acts of their subordinates under a *respondeat superior*[7] theory of liability. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Rather, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, *supra*, 556 U.S. at 677. Because vicarious liability is inapplicable to Section 1983 suits, Plaintiffs must plead that each defendant, through his

---

[7] *Respondeat superior* is Latin for "let the superior make answer." It is a doctrine holding an employer liable for an employee's wrongful acts committed within the scope of employment. Black's Law Dictionary (9th ed. 2009).

or her individual actions, has violated the Constitution. *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011).

A supervisor may be liable under Section 1983 upon a showing of (1) personal involvement in the constitutional deprivation or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Henry A. v. Willden*, 678 F.3d 991, 1003-04 (9th Cir. 2012) (citing *Starr*, *supra*, 652 F.3d at 1207). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). Allegations that are simply "bald" or "conclusory" statements that merely recite the elements of a claim do not "plausibly" establish the supervisor's personal liability for a subordinate's constitutional wrong. *Iqbal*, *supra*, 556 U.S. at 675-84.

### 2. Adequacy of Allegations Against the UC Administrator Defendants

The vast majority of Plaintiffs' allegations against the UC Administrators lump all seven administrators together without differentiating their respective roles in the alleged wrongdoing. For the most part, Plaintiffs make generalized allegations that Chancellor Birgeneau and the other UC Administrators "planned, coordinated, and ordered the police attack and indiscriminate arrests of plaintiffs." (FAC ¶ 495.) "These bare assertions, much like the pleading of conspiracy in *Twombly*, amount to nothing more than a 'formulaic recitation of the elements' of a constitutional [tort]," *Iqbal*, *supra*, 556 U.S. at 680-81 (quoting *Twombly*, *supra*, 550 U.S. at 555), devoid of further factual enhancement from which to infer more than the mere possibility of misconduct.[8] Although these bare allegations may be "consistent with" a finding of liability against the other UC

---

[8] In *Iqbal*, the plaintiff alleged that Attorney General John Ashcroft and other high ranking government officials "'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest'" and "that Ashcroft was the 'principal architect' of this invidious policy." 556 U.S. at 680. The Supreme Court held that these allegations were not entitled to the assumption of truth because they are conclusory, and "amount to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim." *Id.* at 680-81 (quoting *Twombly*, *supra*, 550 U.S. at 555).

Administrators, such allegations "stop[ ] short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, *supra*, 556 U.S. at 678 (quoting *Twombly*, *supra*, 550 U.S. at 557).

The only specific factual allegations relate to an email by Chancellor Birgeneau and a public statement by Vice Chancellor Le Grande that the protestors could remain at Sproul Plaza but not camp. (*See* FAC ¶¶ 89, 90, 105, 147). Chancellor Birgeneau emailed: "It is critical that we do not back down on our no encampment policy," (*id*. ¶ 89), after which Vice Chancellor Le Grande announced to the protestors a plan to have police officers clear the encampment if the protestors did not remove the tents by 10:00 pm. (*Id*. ¶¶ 105, 147.) These allegations are sufficient to connect the actions of Chancellor Birgeneau and Vice Chancellor Le Grande to police officers clearing the encampment. Nevertheless, until Plaintiffs identify which specific cause of action is brought against which specific defendant(s), the Court is not able to determine whether these facts are sufficient to connect Chancellor Birgeneau and Vice Chancellor Le Grande to any unconstitutional acts.

The remaining UC Administrators have administrative responsibilities regarding campus emergency procedures. Based upon the lone allegation that certain UC Administrators were members of the "Crisis Management Team" who were assigned responsibility for overseeing the campus response to protests, and numerous facts of which the Plaintiffs request the Court to take judicial notice, Plaintiffs argue, *but do not allege*, that the UC Administrators "set in motion, or knew of but failed to stop, the injuries done to the plaintiffs." (Opp'n to UC Defs.' Mot. 17.) The Court will not infer critical facts not supported by allegations in the FAC.

Based on the foregoing analysis, Plaintiffs fail to allege sufficient facts to hold all of the UC Administrators individually responsible for the allegedly unconstitutional conduct of the police in breaking up the protests on November 9, 2011.

### C. PLAINTIFFS' REMAINING CLAIMS

The foregoing analysis specifically addressed only one cause of action, Plaintiffs' claim for Fourth Amendment Excessive Force (Count IV). Plaintiffs' remaining claims were not addressed. Those claims are for First Amendment Retaliation (Count I); Abuse of Process (Count II); Retaliatory Prosecution (Count III); Fourth Amendment False Arrest (Count V); and Conspiracy to Violate Civil Rights (Count VI).

Plaintiffs have explained that because Count IV for Excessive Force is the only claim brought against the Police Officer Defendants, Plaintiffs do not object to dismissal of the remaining claims against the Police Officer Defendants. Therefore, the Court **DISMISSES** all other claims—Counts I, II, III, V, and VI—against the Police Officer Defendants (ACSO Chief Ahern, ACSO Officers Chavez, Garcia, King, Obichere, UCPD Detective Florendo, and UCPD Officers Hernandez and Lachler). Based on Plaintiffs' representation that Plaintiffs are not asserting these claims against the Police Officer Defendants, Plaintiffs will need to file a motion for leave to amend if they seek to amend their complaint to state any of these causes of action against any of the Police Officer Defendants.

Additionally, Plaintiffs have not addressed any of the Defendants' meritorious arguments for dismissal of their claims for Abuse of Process (Count II), Retaliatory Prosecution (Count III), and Conspiracy to Violate Civil Rights (Count VI), which the Court construes to be an abandonment of these claims. Therefore, Plaintiffs will need to file a motion for leave to amend if they seek to amend their complaint to state any of these causes of action. As to the claims against the UC Administrators, leave to amend is granted for Counts I, IV, and V, only.

## V.   CONCLUSION

For the reasons set forth above, the Court *tentatively* **ORDERS** as follows:

(1)   The Motion to Dismiss filed by Defendants Gregory Ahern, Chavez, Garcia, King, and Obichere (Dkt. No. 50) is **DENIED IN PART** and **GRANTED IN PART**:

   a)   The Motion is **DENIED** as to Count IV against Defendants Chavez, Garcia, King, and Obichere. Plaintiffs may pursue their claim for excessive force against Defendants Chavez, Garcia, King, and Obichere.

   b)   The Motion is **GRANTED** as to all claims against Gregory Ahern, and Counts I, II, III, V, and VI against Defendants Chavez, Garcia, King, and Obichere, **WITH LEAVE TO FILE A MOTION TO AMEND**.

(2)   The Motion to Dismiss filed by Defendants Robert J. Birgeneau, George Breslauer, Mitchell Celaya, Claire Holmes, Harry Legrande, Linda Williams, and John Wilton (Dkt. No. 57) is **GRANTED**:

1  a) **WITH LEAVE TO AMEND** the claims for First Amendment Retaliation (Count I); Fourth Amendment Excessive Force (Count IV); and Fourth Amendment False Arrest (Count V), and

b) **WITH LEAVE TO FILE A MOTION TO AMEND** the claims for Abuse of Process (Count II); Retaliatory Prosecution (Count III); and Conspiracy to Violate Civil Rights (Count VI).

(3) The Motion to Dismiss filed by Defendants Rick Florendo, Samantha Lachler, and N. Hernandez (Dkt. No. 58) is **DENIED IN PART** and **GRANTED IN PART**:

a) The Motion is **DENIED** as to Count IV against Defendant Samantha Lachler. Plaintiffs may pursue their claim for excessive force against Defendant Samantha Lachler.

b) The Motion is **GRANTED** as to all claims against Rick Florendo and N. Hernandez, and Counts I, II, III, V, and VI against Samantha Lachler, **WITH LEAVE TO AMEND** Count IV, and **WITH LEAVE TO FILE A MOTION TO AMEND** Counts I, II, III, V, and VI.

(4) No later than 28 days from the date this Order is filed, Plaintiffs shall file one of the following:

a) Second Amended Complaint;

b) Motion for Leave to Amend the First Amended Complaint to add claims for which leave to amend was not granted[9]; or

c) Statement indicating that they will proceed on Count IV of the First Amended Complaint against Defendants Chavez, Garcia, King, Obichere, and Samantha Lachler.

No later than 2:00 p.m. on Monday, February 25, 2013, the parties shall file a **JOINT** statement either (1) stipulating in writing to entry of this tentative ruling; or (2) briefly identifying the issue or issues on which they wish to argue. If the parties stipulate to entry of the tentative

---

[9] Should Plaintiffs proceed with this option, they shall file as an exhibit, a proposed Second Amended Complaint, *see* Civil L.R. 10-1, which highlights those claims for which leave to amend is requested.

15

ruling, then the hearing shall be taken off calendar, and the tentative ruling shall become the order of the Court. If the parties do not so stipulate, the hearing shall be held as scheduled.

**IT IS SO ORDERED**.

Date: February 22, 2013

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**